UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MONICA REDMOND-NIEVES, Personal Representative of the Estate of Edgard Nieves,<br><br>          Plaintiff,<br><br>OKUMA AMERICA CORPORATION, & ROBERT E. MORRIS COMPANY, LLC,<br><br>          Defendant. | CIVIL ACTION<br><br>NO. 4:16-12216-TSH |

**ORDER AND MEMORANDUM ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket Nos. 104 & 105)**

**September 16, 2019**

**HILLMAN, D.J.**

Monica Redmond-Nieves ("Plaintiff") filed this wrongful death action on behalf of the estate of her husband, Edgard Nieves ("Mr. Nieves"). She alleges that Okuma America Corporation ("Okuma") and Robert E. Morris Company, LLC, were negligent and breached express and implied warranties by selling Okuma's L1420 CNC Lathe.

Plaintiff moves for partial summary judgment on liability for breach of implied warranty. (Docket Nos. 104). Okuma has filed a cross-motion for summary judgment on all of Plaintiff's claims against it. (Docket No. 105). Because the parties raise genuine disputes of material fact relative to negligence, breach of implied warranty, and punitive damages, the Court ***denies*** Okuma's motion for summary judgment on Counts I and II and the parties' cross-motions for summary judgment on Count III. Because Plaintiff fails to oppose summary judgment on the breach of express warranty claim, the Court ***grants*** Okuma's motion as to Count IV.

1

**Background**

In 1998, Inner-Title Corporation ("Inner-Tite") purchased an Okuma L1420 CNC Lathe from Robert E. Morris Company, LLC, a distributor for Okuma. (Docket No. 104-1 at 2). On December 24, 2015, Mr. Nieves, an employee of Inner-Tite, died while operating this lathe. Mr. Nieves inserted a six-foot piece of metal bar stock into the lathe, leaving approximately two feet of bar stock extended beyond the chuck cylinder. When the lathe reached a certain operating speed,[1] it began whipping the bar stock. The bar stock bent to a 90-degree angle and struck Mr. Nieves in the head and arm. Co-workers found Mr. Nieves conscious but suffering from massive bleeding. Mr. Nieves underwent several surgeries but ultimately died five hours later.

Plaintiff originally filed a Complaint in state court, but Okuma removed the case to this Court on November 2, 2016. Plaintiff asserts four claims against Okuma: wrongful death for negligence (Count I), conscious pain and suffering for negligence (Count II), breach of implied warranty (Count III), and breach of express warranty (Count IV). Plaintiff also seeks punitive damages.

On April 30, 2019, Plaintiff moved for summary judgment on liability for breach of warranty. (Docket No. 104). Okuma filed a cross-motion for summary judgment on all of Plaintiff's claims against it on May 1, 2019. (Docket No. 105).

**Legal Standard**

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An issue is "genuine" when a reasonable factfinder could resolve it

---

[1] The parties dispute whether the lathe reached 2500 revolutions per minute. (Docket No. 111 at 2).

in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it may affect the outcome of the suit. *Id*.

When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (citation omitted).

## Discussion

### 1. Counts I & II (Wrongful Death and Conscious Pain and Suffering Negligence)

Okuma moves for summary judgment on both of Plaintiff's negligence claims. Okuma, however, has failed to make any argument showing entitlement to judgment as a matter of law on either claim. The Court thus ***denies*** Okuma's motion for summary judgment on Counts I and II.

### 2. Count III (Breach of Implied Warranty)

A merchant who sells good implicitly warrants that his goods "are fit for the ordinary purposes for which such goods are used." M.G.L. c. 106 § 2-314(2)(c). This warranty is called the implied warranty of merchantability. In Massachusetts, liability for the implied warranty of merchantability has become "a remedy intended to be fully as comprehensive as the strict liability theory of recovery that has been adopted by a great many other jurisdictions." *Back v. Wickes Corp.*, 375 Mass. 633, 639 (1978). Thus, a manufacturer is liable for the foreseeable uses of its goods and "must design against the reasonably foreseeable risks attending the [good's] use in that setting." *Id.* at 640.

Warranty liability may be premised on a design defect or the failure to warn. *See Haglund v. Philip Morris, Inc.*, 446 Mass. 741, 747 (2006). Plaintiff and Okuma filed cross-

motions for summary judgment under both theories.  For the reasons below, the Court *__denies__* these motions.

　　A.  *Design Defect*

A manufacturer is liable for breaching the implied warranty of merchantability "if its 'conscious design choices' fail to anticipate the reasonably foreseeable risks of 'ordinary' use." *See Haglund*, 446 Mass. at 747–48 (quoting *Back*, 375 Mass. at 640, 642).  The good's features control the inquiry.  *See id.* at 747.  "Thus, warranty liability may be imposed even where the product was properly designed, manufactured, or sold; conformed to industry standards; and passed regulatory muster, and even where the consumer used the product negligently." *Id.* at 748.  Factors relevant to the adequacy of a good's design include "the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." *Id.* (internal quotation marks omitted).

Because there are genuine disputes of material fact that a reasonable jury could resolve in favor of either party, the Court denies both motions for summary judgment.  First, the parties disagree about the gravity of the risk posed by extended bar stock.  Plaintiff argues that the Okuma L1420 CNC Lathe is defective because, although no length of bar stock is safe to extend beyond the chuck cylinder, the machine designedly has a removable cap to enable users to add extended bar stock.  According to Plaintiff, the mere fact that users can operate the machine with extended bar stock renders the design defective given the gravity of the risk. (Docket No. 104-7 at 13, 108 at 6–7).  Okuma contends extended bar stock is only a hazard if it is *unsupported*.  Okuma, however, sells the machine with the removable cap to accommodate users who employ a

bar feeder or other support for extended bar stock, thereby mitigating the danger.  (Docket No. 109 at 3–4).

Second, the parties dispute the consequences that an alternative design would have on users.  Plaintiff alleges that Okuma could incorporate a bar feeder into its spindle cap.  But Okuma asserts that design incorporating both features would cost users an additional $20,000 to $50,000.  (Docket Nos. 107 at 10–11).  Okuma also argues that it would prevent users from developing customized bar feeders designed for their needs.  (Docket Nos. 107 at 11).

Finally, the parties disagree about the feasibility of Plaintiff's proposed alternative designs.[2]  Plaintiff contends that "a computer program containing ladder logic combined with a photoelectric light curtain" or "an interlock on the bar feeder mechanism of the L1420" would provide safeguard against the hazard posed by extended bar stock.  (Docket No. 115 at 9).  Okuma challenges whether either option would work as intended and the extent to which each option would safeguard operators.  (Docket No. 107 at 7–10, 13; 107-8 at 22–29).

Because the parties have raised genuine disputes of material fact regarding the various adequacy factors, the Court cannot determine as a matter of law whether the design of the L1420 CNC Lathe is defective.  The Court thus denies the motions for summary judgment.

B. *Failure to Warn*

---

[2] Okuma contends that Plaintiff failed to provide any feasible alternative design.  (Docket No. 109 at 4).  In response, Plaintiff suggests that it does not need offer such evidence.  The Court declines to decide this issue, however, because even assuming *arguendo* that a plaintiff must submit evidence of a feasible alternative design, Plaintiff has met that burden here.  *See Haglund*, 446 Mass. at 748 (noting that a plaintiff must only prove "that a safer alternative design was *feasible*, not that any manufacturer in the industry employed it or even contemplated it" (emphasis added)).

A manufacturer has a duty to warn users of dangers of which it knows or should have known. *Bavuso v. Caterpillar Indus., Inc.*, 408 Mass. 694, 699 (1990). The L1420 CNC Lathe contains a warning to "NOT allow bar stock to extend beyond back end of the chuck cylinder. FAILURE TO FOLLOW THIS INSTRUCTION MAY RESULT IN DEATH OR SERIOUS PERSONAL INJURY." (Docket Nos. 107 at 4, 107-7 at 1–3).

The Court denies both parties' motions for summary judgment because the parties have raised genuine disputes of material fact regarding the adequacy of Okuma's warning. Plaintiff argues that Okuma's warning label is inadequate because Okuma intends users to operate the machine in precisely the manner against which it warns, i.e., to extend bar stock beyond the back end of the chuck cylinder. (Docket No. 108 at 8). Plaintiff also contends that the warning is inadequate because it is factually incorrect.[3] (Docket No. 115 at 4). The warning implies that any extended bar stock poses a risk, but according to Okuma, only unsupported extended bar stock is dangerous. (Docket No. 115 at 4). Okuma suggests that the warning "does exactly what it is supposed to."[4] (Docket No. 109 at 6–7). It advises users that serious injury may result from

---

[3] Plaintiff further contends that Okuma's warning is inadequate because (1) it fails to instruct users to reattach the single cap whenever a bar feeder is not being used to support extended bar stock, and (2) the danger is operating speed in combination with extended bar stock, not the extension of bar stock beyond the cylinder itself, but Okuma's warning fails to mention operating speed. (Docket Nos. 108 at 8, 109-10 at 3, 25). Plaintiff, however, fails to offer any evidence suggesting that these warnings are necessary or would have prevented the accident. The Court thus declines to grant summary judgment on either ground.

[4] Okuma also argues that (1) its warnings are irrelevant because Mr. Nieves was explicitly informed by his employer of the dangers of operating the machine with unsupported extended bar stock, and (2) the danger of operating the machine with unsupported extended bar stock was open and obvious such that no warning was needed. (Docket No. 107 at 17–18). The first argument relates to the *Correia* defense, addressed below, not the merits of Plaintiff's failure to warn argument. The second is disputed by Plaintiff (Docket No. 111 at 11–12), so the Court declines to award summary judgment as a matter of law on it.

using extended bar stock. A user can then mitigate the danger of injury by providing proper support for the extended bar stock. (Docket No. 109 at 7).

A reasonable juror could resolve this issue in favor of either party given this record. The Court thus cannot decide as a matter of law whether Okuma's warning was adequate.

C. Correia *Defense*

"[A] plaintiff's knowing and unreasonable use of a defective product is an affirmative defense to a defendant's breach of warranty." *Colter v. Barber-Greene Co.*, 403 Mass. 50, 60 (1988); *see also Correia v. Firestone Tire & Rubber Co.*, 388 Mass. 342, 356–57 (1983). To establish this affirmative defense, a defendant must show that (1) that the plaintiff "violated a duty to act reasonably with respect to a product he knew to be defective and dangerous," and (2) "that conduct was a cause of the injury." *Allen v. Chance Mfg. Co.*, 398 Mass. 32, 34 (1986). "The *Correia* defense is applicable only after a plaintiff has proved the case-in-chief." *See Haglund*, 446 Mass. at 749.

The Court finds that there is a genuine dispute of material fact regarding whether Mr. Nieves knew that unsupported extended bar stock could bend and seriously injure him. Okuma has introduced testimony from Brian Matejko ("Mr. Matejko"), Mr. Nieves's manager, that Mr. Matejko had trained Mr. Nieves on the dangers of unsupported extended bar stock. (Docket Nos. 109 at 6, 109-10 at 25–29). And the record indicates that Mr. Nieves' assignment on December 24, 2015, called for 3-foot or 4-foot bar stock, not the 6-foot bar stock he used. (Docket No. 107 at 15). This evidence would suggest that Mr. Nieves acted unreasonably in using unsupported extended bar stock. But Plaintiff has challenged the credibility this evidence.[5] (Docket No. 111

---

[5] Plaintiff also contends that the testimony of Mr. Nieves' manager is inadmissible as hearsay. (Docket No. 111 at 13). The Court declines to rule on admissibility at this juncture,

at 11–12, 14–15). Plaintiff suggests that (1) Mr. Matejko was biased, (2) Okuma has no basis to allege that Mr. Nieves was aware of the operating speed of the machine, and (3) Okuma has no basis to allege that Mr. Nieves had the chance to press the emergency stop button. (Docket No. 11 at 12). As the jury could find in favor of either party under these circumstances, the Court cannot decide the applicability of the *Correia* defense as a matter of law.

### 3.  Count IV (Breach of Express Warranty)

Okuma moves for summary judgment on Count IV. It argues that it cannot be held liable for breaching any express warranty because it only gave a one-year express warranty on the machine, and that warranty expired long before the 2015 accident. (Docket No. 107 at 18). Plaintiff does not offer any response to this argument, so the Court ***grants*** summary judgment as to Count IV.

### 4.  Punitive Damages

Okuma moves for summary judgment on entitlement to punitive damages. (Docket No. 107 at 19). Okuma contends that, because it undertook safety measures to prevent injury and on at least one occasion revised the warning label to comply with new safety standards, Plaintiff cannot show that Okuma knowingly or intentionally disregard an unreasonable risk. (Docket No. 107 at 19–20). Plaintiff, however, has offered evidence of prior accidents involving extended bar stock which she alleges should have given Okuma notice of the defect before it manufactured the L1420 CNC Lathe.[6] (Docket No. 111 at 19–20). To the extent Okuma

---

however, because it is not clear that the testimony is being offered for the truth of the matter asserted (i.e., that extended bar stock would bend).

[6]  Okuma suggests that it will seek to exclude this evidence from trial, but it has not identified under what evidentiary grounds it will pursue exclusion. (Docket No. 113 at 6–7). As there are at least two rules which might provide for its inclusion, one of which involves notice, the Court declines the invitation to ignore this evidence without more information.

challenges its awareness of these accidents, Okuma merely creates a factual dispute which the jury should resolve. The Court therefore *__denies__* Okuma's motion for summary judgment on the availability of punitive damages.

## Conclusion

For the reasons stated above, the Court *__grants__* in part and *__denies__* in part Okuma's motion for summary judgment (Docket No. 105); and *__denies__* Plaintiff's motion for summary (Docket No. 104). Counts I, II, and III survive the parties' motions.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**